**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF COLORADO**

| | |
|---|---|
| In re: | Case No. 19-13271-MER |
| NSPIRE HEALTH, INC.<br>EIN:  84-1153246, | Chapter 11 |
| Debtor. | |
| In re: | Case No. 19-13273-MER |
| NSPIRE HEALTH, LLC<br>EIN:  20-8754321, | Chapter 11 |
| Debtor. | **Jointly Administered in**<br>**Case No. 19-13271-MER** |

*SECOND AMENDED* **CHAPTER 11 PLAN OF REORGANIZATION FOR NSPIRE HEALTH, INC. AND NSPIRE HEALTH, LLC**

Dated:  February 27, 2020

Michael J. Pankow, Esq.
Andrew J. Roth-Moore, Esq.
BROWNSTEIN HYATT FARBER SCHRECK, LLP
410 17th Street, Suite 2200
Denver, Colorado 80202
Telephone: (303) 223-1100
Facsimile:  (303) 223-1111

**Attorneys for the Debtors**

TABLE OF CONTENTS

Article I. RULES OF INTERPRETATION, COMPUTATION OF TIME,  GOVERNING LAW AND DEFINED TERMS ................................................................................. 1
    A.    Rules of Interpretation, Computation of Time and Governing Law ...................... 1
    B.    Defined Terms ................................................................................. 1

Article II. ADMINISTRATIVE AND PRIORITY TAX CLAIMS .......................................... 9
    A.    Administrative Claims ....................................................................... 9
        1.    Bar Date for Administrative Claims ........................................... 9
        2.    Professional Compensation and Reimbursement Claims ..................... 10
    B.    DIP Facility Claim ........................................................................... 10
    C.    Priority Tax Claims .......................................................................... 10

Article III. CLASSIFICATION AND TREATMENT OF CLASSIFIED CLAIMS AND EQUITY INTERESTS ...................................................................................... 11
    A.    Summary ....................................................................................... 11
    B.    Classification and Treatment of Claims and Equity Interests ............................ 12
        1.    Class 1(a) – Priority Non-Tax Claims against nSpire Health, Inc. .......... 12
        2.    Class 1(b) – Priority Non-Tax Claims against nSpire Health, LLC ........ 12
        3.    Class 2 – Secured Claims against nSpire Health, Inc. ...................... 12
        4.    Class 3(a) – General Unsecured Claims against nSpire Health, Inc. ....... 13
        5.    Class 3(b) – General Unsecured Claims against nSpire Health, LLC ....................................................................................... 13
        6.    Class 4(a) – Equity Interests in nSpire Health, Inc. ....................... 13
        7.    Class 4(b) – Equity Interests in nSpire Health, LLC ...................... 14

Article IV. ACCEPTANCE OR REJECTION OF THE PLAN ............................................ 14
    A.    Presumed Acceptance of Plan ............................................................. 14
    B.    Presumed Non-Acceptance of Plan ....................................................... 14
    C.    Voting Classes ................................................................................ 14
    D.    Cramdown ..................................................................................... 14
    E.    Elimination of Vacant Classes ............................................................ 15

Article V. MEANS FOR IMPLEMENTATION OF THE PLAN ........................................... 15
    A.    Reorganization of the Debtors ............................................................ 15
    B.    Issuance of the Plan Sponsor New Equity Interest ..................................... 15
    C.    Vesting of Assets and Plan Liabilities to KOKO ....................................... 16
    D.    The Net Profit Fund ......................................................................... 16
    E.    Plan Administrator ........................................................................... 17
        1.    Appointment of the Plan Administrator ...................................... 17
        2.    Rights, Powers, and Duties of the Debtors and the Plan Administrator ................................................................... 17
    F.    Release of Liens, Claims, and Equity Interests ......................................... 18
    G.    Certificate of Incorporation and Bylaws ................................................. 18
    H.    Effectuating Documents; Further Transactions; Exemption from Certain Transfer Taxes ............................................................................... 18

Article VI. TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES .. 19
    A.    Rejection of Executory Contracts and Unexpired Leases .................................. 19
    B.    Claims on Account of the Rejection of Executory Contracts or Unexpired
           Leases ............................................................................................................. 19

Article VII. PROVISIONS GOVERNING DISTRIBUTIONS ................................................. 19
    A.    Distributions for Claims Allowed as of the Effective Date ................................ 19
    B.    Distributions on Account of Claims Allowed After the Effective Date ............. 20
          1.    Distributions on Disputed Claims ................................................. 20
          2.    Special Rules for Distributions to Holders of Disputed Claims ............. 20
    C.    Delivery and Distributions and Undeliverable or Unclaimed Distributions ........ 20
          1.    Record Date for Distributions ....................................................... 20
          2.    Delivery of Distributions in General .............................................. 20
          3.    Plan Administrator Compensation ................................................. 20
          4.    *De Minimis* Distributions .............................................................. 21
          5.    Undeliverable and Unclaimed Distributions ................................. 21
    D.    Compliance with Tax Requirements/Allocations ............................................. 22
    E.    Calculation of Amounts to Be Distributed ....................................................... 22
    F.    Setoffs .............................................................................................................. 23

Article VIII. PROCEDURES FOR RESOLVING CONTINGENT, UNLIQUIDATED AND
DISPUTED CLAIMS ....................................................................................................... 23
    A.    Resolution of Disputed Claims ....................................................................... 23
          1.    Allowance of Claims .................................................................... 23
          2.    Prosecution of Objections to Claims ............................................ 23
          3.    Claims Estimation ........................................................................ 23
          4.    Expungement or Adjustment to Claims Without Objection ................... 24
          5.    Deadline to File Objections to Claims .......................................... 24
    B.    Disallowance of Claims .................................................................................. 24

Article IX. CONDITIONS PRECEDENT TO CONFIRMATION AND CONSUMMATION OF
THE PLAN ...................................................................................................................... 25
    A.    Conditions Precedent to Confirmation ............................................................ 25
    B.    Conditions Precedent to Consummation ......................................................... 25
    C.    Waiver of Conditions ..................................................................................... 25
    D.    Effect of Non Occurrence of Conditions to Consummation ............................. 25

Article X. SETTLEMENT, RELEASE AND RELATED PROVISIONS ................................. 26
    A.    Compromise and Settlement ........................................................................... 26
    B.    Preservation of Rights of Action ..................................................................... 26
          1.    Maintenance of Causes of Action. ................................................ 26
          2.    Limitation of Liability .................................................................. 26
          3.    Debtor Releases. .......................................................................... 27

Article XI. BINDING NATURE OF PLAN ........................................................................... 28

Article XII. RETENTION OF JURISDICTION ...................................................................... 28

Article XIII. MISCELLANEOUS PROVISIONS ...................................................................... 30
    A.    Payment of Statutory Fees ................................................................. 30
    B.    Modification of Plan .......................................................................... 30
    C.    Revocation of Plan ............................................................................ 30
    D.    Successors and Assigns ..................................................................... 30
    E.    Reservation of Rights ........................................................................ 30
    F.    Section 1146 Exemption .................................................................... 31
    G.    Further Assurances ............................................................................ 31
    H.    Severability ....................................................................................... 31
    I.    Service of Documents ....................................................................... 31
    J.    Return of Security Deposits .............................................................. 32
    K.    Filing of Additional Documents ....................................................... 32

### *Second Amended* Chapter 11 Plan of Reorganization for nSpire Health, Inc. and nSpire Health, LLC

nSpire Health, Inc. and nSpire Health, LLC, jointly propose this Chapter 11 Plan for the resolution of Claims against and Equity Interests in the Debtors pursuant to chapter 11 of the Bankruptcy Code.

Please refer to the separate Disclosure Statement for information regarding this Plan. The Debtors encourage you to read this Plan and the Disclosure Statement in their entirety before voting to accept or reject this Plan. No materials other than the Disclosure Statement and the various exhibits and schedules attached to or incorporated therein have been approved for use in soliciting acceptance or rejection of this Plan.

### ARTICLE I.

### RULES OF INTERPRETATION, COMPUTATION OF TIME, GOVERNING LAW AND DEFINED TERMS

A.     *Rules of Interpretation, Computation of Time and Governing Law*

1.     For purposes herein: (a) in the appropriate context, each term, whether stated in the singular or the plural, shall include both the singular and the plural, and pronouns stated in the masculine, feminine, or neutral gender shall include the masculine, feminine, and the neutral gender; (b) any reference herein to a contract, lease, instrument, release, indenture, or other agreement or document being in a particular form or on particular terms and conditions means that the referenced document shall be substantially in that form or substantially on those terms and conditions; (c) any reference herein to an existing document or exhibit having been Filed or to be Filed shall mean that document or exhibit, as it may thereafter be amended, modified, or supplemented; (d) unless otherwise specified, all references herein to "Articles" are references to Articles hereof or hereto; (e) unless otherwise stated, the words ''herein,'' "hereof," and ''hereto'' refer to the Plan in its entirety rather than to a particular portion of the Plan; (f) captions and headings to Articles are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation hereof; (g) the rules of construction set forth in section 102 of the Bankruptcy Code shall apply; and (h) any term used in capitalized form herein that is not otherwise defined but that is used in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning assigned to that term in the Bankruptcy Code or the Bankruptcy Rules, as the case may be.

2.     The provisions of Bankruptcy Rule 9006(a) shall apply in computing any period of time prescribed or allowed herein.

B.     *Defined Terms*

Unless the context otherwise requires, the following terms shall have the following meanings when used in capitalized form herein:

"*Accrued Professional Compensation*" means, at any given moment, all accrued, contingent, or unpaid fees and expenses (including, without limitation, success fees and Allowed Professional Compensation) for legal, financial advisory, accounting, and other services and reimbursement of expenses that are accrued, incurred, awardable, or allowable under sections 328, 330(a), or 331 of the Bankruptcy Code or otherwise rendered as such prior to the Effective Date by any Retained Professionals in the Chapter 11 Cases, that the Bankruptcy Court has not denied by a Final Order, to the extent that any such fees and expenses have not been previously paid regardless of whether a fee application has been Filed for any such amount.  To the extent that the Bankruptcy Court or any higher court denies or reduces by a Final Order any amount of a Retained Professional's fees, then those reduced or denied amounts shall no longer constitute Accrued Professional Compensation.

"*Administrative Claim*" means any Claim for costs and expenses of administration of the Estate under sections 503(b), 507(b), or 1114(e)(2) of the Bankruptcy Code (including claims under section 503(b)(9) of the Bankruptcy Code that have not been paid by prior order of the Bankruptcy Court), including, without limitation: (a) the actual and necessary costs and expenses incurred after the Petition Date of preserving the Estates and operating the business of the Debtors; (b) Allowed Professional Compensation; and (c) all fees and charges assessed against the Estate under chapter 123 of title 28 of the United States Code, 28 U.S.C. §§ 1911–1930.

"*Administrative Claims Bar Date*" has the meaning provided in Article II.A.1. herein.

"*Affiliate*" has the meaning set forth at section 101(2) of the Bankruptcy Code.

"*Allowed*" means, with respect to Claims or Equity Interests: (a) any Claim or Equity Interest, proof of which is timely Filed by the applicable Claims Bar Date (or which by the Bankruptcy Code or Final Order is not or shall not be required to be Filed); (b) any Claim or Equity Interest that is listed in the Schedules as of the Effective Date as not contingent, not unliquidated, and not disputed, and for which no Proof of Claim or Equity Interest has been timely Filed; or (c) any Claim or Equity Interest Allowed pursuant to the Plan; *provided, however,* that with respect to any Claim or Equity Interest described in clause (a) above, such Claim or Equity Interest shall be considered Allowed only if and to the extent that (x) with respect to any Claim or Equity Interest no objection to the allowance thereof has been interposed within the applicable period of time fixed by the Plan, the Bankruptcy Code, the Bankruptcy Rules, or the Bankruptcy Court or (y) such an objection is so interposed and the Claim or Equity Interest shall have been Allowed for Distribution purposes only by a Final Order.  Any Claim that has been or is hereafter listed in the Schedules as contingent, unliquidated or disputed, and for which no Proof of Claim has been timely Filed, is not considered Allowed and shall be expunged without further action by the Debtors or Plan Administrator and without any further notice to or action, order or approval of the Bankruptcy Court.

"*Allowed Professional Compensation*" means all Accrued Professional Compensation Allowed or awarded by a Final Order of the Bankruptcy Court or any other court of competent jurisdiction.

"*Assets*" means all of the Debtors' right, title, and interest of any nature in property, wherever located, as specified in section 541 of the Bankruptcy Code.

"*Avoidance Actions*" means any and all claims and Causes of Action which the Debtors, the Estates, or other appropriate party in interest has asserted or may assert under sections 502, 510, 542, 544, 545, or 547 through 553 of the Bankruptcy Code or under similar or related state or federal statutes and common law, including fraudulent transfer laws.

"*Ballots*" means the ballots accompanying the Disclosure Statement upon which certain Holders of Impaired Claims entitled to vote shall, among other things, indicate their acceptance or rejection of the Plan in accordance with the Plan and the procedures governing the solicitation process, and which must be actually received on or before the Voting Deadline.

"*Bankruptcy Code*" means Chapter 11 of the Bankruptcy Code, 11 U.S.C. §§ 101–1532, as amended and applicable to the Chapter 11 Cases.

"*Bankruptcy Court*" means the United States Bankruptcy Court for the District of Colorado, having jurisdiction over the Chapter 11 Cases and, to the extent of the withdrawal of any reference under section 157 of title 28 of the United States Code, the United States District Court for the District of Colorado.

"*Bankruptcy Rules*" means the Federal Rules of Bankruptcy Procedure, as applicable to the Chapter 11 Case, promulgated under 28 U.S.C. § 2075 and the general, local, and chambers rules of the Bankruptcy Court.

"*Business Day*" means any Day, other than a Saturday, Sunday, or "legal holiday" (as defined in Bankruptcy Rule 9006(a)).

"*Cash*" means the legal tender of the United States of America or the equivalent thereof.

"*Causes of Action*" means all actions, causes of action (including Avoidance Actions), Claims, liabilities, obligations, rights, suits, debts, damages, judgments, remedies, demands, setoffs, defenses, recoupments, cross claims, counterclaims, third-party claims, indemnity claims, contribution claims, or any other claims disputed or undisputed, suspected or unsuspected, foreseen or unforeseen, direct or indirect, choate or inchoate, existing, or hereafter arising, in law, equity, or otherwise, based in whole or in part upon any act or omission or other event occurring prior to the Petition Date or during the course of the Chapter 11 Cases, including through the Effective Date, including, without limitation, directors and officers insurances claims. Notwithstanding the foregoing, Causes of Action does not include accounts receivable generated by the Debtors in the ordinary course.

"*Chapter 11 Cases*" means the jointly administered cases commenced by the Debtors under Chapter 11 of the Bankruptcy Code under case number 19-13271 in the Bankruptcy Court.

"*Claim*" means any claim against the Debtors as defined in section 101(5) of the Bankruptcy Code.

"*Claims Bar Date*" means, January 27, 2020 and the Governmental Bar Date of January 27, 2020 or such other period of limitation as may be specifically fixed by an order of the Bankruptcy Court to File such Claims.

"*Claims Objection Bar Date*" means, for each Claim, the later of (a) 120 Days after the Effective Date and (b) such other period of limitation as may be specifically fixed by an order of the Bankruptcy Court for objecting to such Claims.

"*Claims Register*" means the official register of Claims maintained by the Bankruptcy Court.

"*Class*" means a category of Holders of Claims or Equity Interests as set forth in Article III herein pursuant to section 1122(a) of the Bankruptcy Code.

"*Commencement*" or "*Petition Date*" means April 22, 2019, the date on which the Debtors Filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code.

"*Confirmation*" means the entry of the Confirmation Order on the docket of the Chapter 11 Cases, subject to all conditions specified in Article IX.B. of the Plan having been: (a) satisfied; or (b) waived pursuant to Article IX.C. of the Plan.

"*Confirmation Date*" means the date upon which the Bankruptcy Court enters the Confirmation Order on the docket of the Chapter 11 Cases, within the meaning of Bankruptcy Rules 5003 and 9021.

"*Confirmation Hearing*" means the hearing held by the Bankruptcy Court on Confirmation of the Plan pursuant to section 1129 of the Bankruptcy Code, as such hearing may be continued from time to time.

"*Confirmation Hearing Notice*" means that certain notice of Confirmation Hearing approved by the Bankruptcy Court.

"*Confirmation Order*" means the order of the Bankruptcy Court confirming the Plan pursuant to section 1129 of the Bankruptcy Code.

"*Contribution Period*" has the meaning provided in Article V.D.1. of the Plan.

"*Contribution Shortfall*" has the meaning provided in Article V.D.2. of the Plan.

"*Collateral*" means property pledged as security for repayment of a loan or performance of an enforceable obligation.

"*Constituent Documents*" means the governing document of each Debtor and Reorganized Debtor, each in form and substance satisfactory to the Debtors and the Plan Sponsor.

"*Consummation*" means the occurrence of the Effective Date.

"*Creditor*" means a Holder of a Claim.

"*Day*" means any day, including Saturdays, Sundays, and legal holidays.

"*Debtors*" means nSpire Health, Inc. and nSpire Health, LLC, in their individual capacities as debtors in these Chapter 11 Cases.

"*DIP Credit Agreement*" means that certain Loan and Security Agreement, dated as of December 19, 2019, among the nSpire Health, Inc., as borrower, and DIP Lender, as lender.

"*DIP Facility*" means the debtor-in-possession financing provided to nSpire Health, Inc. during the Chapter 11 Cases pursuant to the DIP Credit Agreement.

"*DIP Facility Claims*" means all Claims held by the DIP Lender, or its successor or assignee, arising under or relating to the DIP Facility, whether pursuant to the DIP Credit Agreement, the Final DIP Order, or otherwise.

"*DIP Lender*" means John C Head III, an individual.

"*Disclosure Statement*" means the Disclosure Statement for Amended Chapter 11 Plan of Reorganization for nSpire Health, Inc. and nSpire Health, LLC Filed on January 10, 2020 at Docket No. 152.

"*Disputed Claim*" means any Claim or Equity Interests on (a) the Claims Register that is subject to a claim objection filed with the Bankruptcy Court, or (b) that was included on the Schedules as a Disputed Claim for which a Proof of Claim was Filed.

"*Distribution Record Date*" means the date for determining which Holders of Claims are eligible to receive Distributions hereunder and shall be the Voting Deadline or such other date as designated in an order of the Bankruptcy Court.

"*Distribution*" means any payment of Cash called for under the Plan.

"*Effective Date*" means the Day that is the first Business Day occurring which is at least fifteen (15) Days after Confirmation.

"*Effective Date Anniversary*" means the date on which the Effective Date occurred during each year following the Effective Date.

"*Entity*" means an entity as defined in section 101(15) of the Bankruptcy Code.

"*Equity Interest*" means any (a) security interest in the Debtors, including all issued, unissued, authorized, or outstanding shares of stock together with any warrants, options, or contractual rights to purchase or acquire such equity securities at any time and all rights arising with respect thereto, or (b) partnership, limited liability company, or similar interest in the Debtors.

"*Estate*" means the estate created for each Debtor in the Chapter 11 Cases pursuant to section 541 of the Bankruptcy Code.

"*Excluded Assets*" means the Assets identified in the Plan Supplement that will remain in the Estates following the Effective Date.

"*Exculpated Parties*" has the meaning provided in Article X.B.2. hereof.

"*Executory Contract*" means a contract to which the Debtors are a party that is subject to assumption or rejection under sections 365 or 1123 of the Bankruptcy Code.

"*Fee Claim*" means a Claim under sections 328, 330(a), 331, 363, 503, or 1103 of the Bankruptcy Code for Accrued Professional Compensation.

"*File*" or "*Filed*" means file, filed, or filing with the Bankruptcy Court or its authorized designee in these Chapter 11 Cases.

"*Final DIP Order*" means the Final Order approving the DIP Facility.

"*Final Order*" means an order or judgment of the Bankruptcy Court, or other court of competent jurisdiction with respect to the subject matter, as entered on the docket in the Chapter 11 Cases or the docket of any court of competent jurisdiction, that has not been reversed, stayed, modified, or amended, and as to which the time to appeal, or seek certiorari, or move for a new trial, reargument, or rehearing has expired and no appeal or petition for certiorari or other proceedings for a new trial, reargument, or rehearing been timely taken, or as to which any appeal that has been taken or any petition for certiorari that has been timely Filed has been withdrawn or resolved by the highest court to which the order or judgment was appealed or from which certiorari was sought or the new trial, reargument, or rehearing shall have been denied, resulted in no modification of such order, or has otherwise been dismissed with prejudice.

"*General Unsecured* Claim" means any Claim that is not (i) an Administrative Claim, (ii) Priority Tax Claim, (iii) Priority Non-Tax Claim, (iv) Secured Claim, or (v) an Intercompany Claim.

"*Governmental Bar Date*" means January 27, 2020.

"*Holder*" means an Entity holding a Claim or an Equity Interest.

"*Impaired*" means any Claims in an Impaired Class.

"*Impaired Class*" means an impaired Class within the meaning of section 1124 of the Bankruptcy Code.

"*Initial Distribution Date*" means the date that is as soon as practicable after the Effective Date, but no later than thirty (30) Days after the Effective Date, when Distributions shall commence.  Distribution by the Initial Distribution Date as to the Net Profit Fund shall remain subject to the availability of sufficient proceeds to distribute where the expense of Distribution will not outweigh the benefit of making such Distribution, rendering the Distribution reasonably impractical under the circumstances.  In such case, the Initial Distribution Date shall be when the Distribution is no longer reasonably impractical.

"*Insider*" shall have the meaning ascribed to it under section 101(31) of the Bankruptcy Code.

"*Intercompany Claim*" means a Claim held by a Debtor against another Debtor.

"*Intercompany Interest*" means all Equity Interests held by a Debtor against another Debtor.

"*KOKO*" means KOKO, LLC, a newly formed Colorado limited liability company formed in conjunction with the Plan and wholly owned by the Plan Sponsor.

"*Maximum Contribution*" has the meaning provided in Article V.D.1. of the Plan.

"*Net Profit*" means KOKO's operating revenue less all expenses, including payments under the Plan and of fees payable pursuant to section 1930 of title 28 of the United States Code.

"*Net Profit Fund*" means a segregated bank account established in the name of the Estates to receive Net Profit.

"*Official Actions*" means actions taken by the Exculpated Parties in their official capacities in the Chapter 11 Cases after the Petition Date through the Confirmation Date.

"*Periodic Distribution Date*" means the first Business Day that is as soon as reasonably practicable occurring no later than approximately 180 Days after the Initial Distribution Date, and thereafter, the first Business Day that is as soon as reasonably practicable occurring no later than 180 Days after the immediately preceding Periodic Distribution Date.

"*Person*" means a person as defined in section 101(41) of the Bankruptcy Code.

"*Plan*" means this Second Amended Chapter 11 Plan of nSpire Health, Inc. and nSpire Health, LLC, as amended, supplemented, or modified from time to time.

"*Plan Administrator*" means John Peterson, or any duly appointed successor.

"*Plan Sponsor*" means Heracles F, LLC, a Delaware limited liability company.

"*Plan Sponsor New Equity Interests*" has the meaning provided in Article V.B. herein

"*Plan Supplement*" means, collectively, the compilation of documents and forms of documents, and all exhibits, attachments, schedules, agreements, documents, and instruments referred to therein, ancillary or otherwise, all of which are incorporated by reference into, and are an integral part of the Plan, as all of the same may be amended, modified, replaced, or supplemented from time to time in accordance with the terms hereof, the Bankruptcy Code, and the Bankruptcy Rules.  Unless otherwise provided herein, the Plan Supplement, if any, shall be Filed by the Debtors on a date that is 14 calendar Days prior to the Confirmation Hearing.

"*Priority Non-Tax Claim*" means any Claim accorded priority in right of payment pursuant to section 507(a) of the Bankruptcy Code, other than a Priority Tax Claim or an Administrative Claim.

"*Priority Tax Claim*" means any Claim of a governmental unit of the kind specified in section 507(a)(8) of the Bankruptcy Code.

"*Proof of Claim*" means a proof of Claim Filed against the Debtors in the Chapter 11 Cases.

"*Record Date*" means the close of business on January 9, 2020.

"*Released Parties*" are John C Head III and the Plan Sponsor.

"*Reorganized Debtors*" means the Debtors as reorganized as of the Effective Date.

"*Reorganized nSpire Health, Inc.*" means nSpire Health, Inc. as reorganized as of the Effective Date.

"*Reorganized nSpire Health, LLC*" means nSpire Health, LLC as reorganized as of the Effective Date.

"*Retained Causes of Action Schedule*" means a list of retained claims and Causes of Action contained in the Plan Supplement, and such claims and Causes of Action shall be preserved notwithstanding the occurrence of the Effective Date or the dissolution of the Debtors.

"*Retained Professional*" means any Entity: (a) employed in these Chapter 11 Cases pursuant to a Final Order in accordance with sections 327 and 1103 of the Bankruptcy Code and to be compensated for services rendered prior to the Effective Date, pursuant to sections 327, 328, 329, 330, or 331 of the Bankruptcy Code; or (b) for which compensation and reimbursement has been allowed by the Bankruptcy Court pursuant to section 503(b)(4) of the Bankruptcy Code.

"*Schedules*" mean, collectively, the schedules of Assets and liabilities and statements of financial affairs Filed by the Debtors pursuant to section 521 of the Bankruptcy Code and in substantial accordance with the official bankruptcy forms, as the same may have been amended, modified or supplemented from time to time.

"*Secured*" means a Claim secured by a lien on property in which either Estate has an interest, which lien is valid, perfected, and enforceable pursuant to applicable law or by reason of a Bankruptcy Court order, or that is secured pursuant to section 365(j) of the Bankruptcy Code, or that is subject to setoff pursuant to section 553 of the Bankruptcy Code, in each case to the extent of the value of the Creditor's interest in the Estate's interest in such property or to the extent of the amount subject to setoff, as applicable, as determined pursuant to section 506(a) of the Bankruptcy Code.

"*Solicitation Deadline*" means the close of business on July 9, 2020.

"*Tax Default Notice*" has the meaning provided in Article II.C. herein.

"*Uncashed Distributions*" has the meaning provided in Article VII.C.5.(a) herein.

"*Undeliverable Distributions*" has the meaning provided in Article VII.C.5.(a) herein.

"*Unexpired Lease*" means a lease to which the Debtors are a party that is subject to assumption or rejection under sections 365 or 1123 of the Bankruptcy Code.

"*Unimpaired*" means, with respect to a Class of Claims or Equity Interests, a Claim or an Equity Interest that is unimpaired within the meaning of section 1124 of the Bankruptcy Code.

"*Voting Classes*" means Classes 3(a) and 3(b).

"*Voting Deadline*" means February 14, 2020 for all Holders of Claims, which is the date and time by which all Ballots must be received by the Debtors, in accordance with the order from the Bankruptcy Court approving the Disclosure Statement, or such other date and time as may be established by the Bankruptcy Court with respect to any Voting Class.

**ARTICLE II.**

**ADMINISTRATIVE AND PRIORITY TAX CLAIMS**

A.   *Administrative Claims*

Each Holder of an Allowed Administrative Claim shall be paid by the Debtors or the Plan Administrator the full unpaid amount of such Claim in Cash (a) on or as soon as reasonably practicable after the Effective Date, (b) if such Claim is Allowed after the Effective Date, on or as soon as reasonably practicable after the date such Claim is Allowed, or (c) upon such other terms as may be agreed upon by such Holder and the Debtors, the Reorganized Debtors, KOKO, or the Plan Administrator, as applicable, or otherwise upon an order of the Bankruptcy Court; *provided*, *however*, that Allowed Administrative Claims representing liabilities incurred by the Debtors in the ordinary course of business during the Chapter 11 Cases, other than those liabilities constituting or relating to commercial tort claims or patent, trademark, or copyright infringement claims, shall be paid in the ordinary course of business in accordance with the terms and subject to the conditions of any agreements governing, instruments evidencing, or other documents related to such transactions, and holders of claims related to such ordinary course liabilities are not required to File or serve any request for payment of such Administrative Claims to the extent they receive payment by the Administrative Claims Bar Date defined in Article II.1. below.

1.   Bar Date for Administrative Claims

Except as otherwise provided in this Article II.A hereof, unless previously Filed, requests for payment of Administrative Claims must be Filed and served on the Debtors and Plan Administrator pursuant to the procedures specified in the Confirmation Order and the notice of entry of the Confirmation Order no later than 45 Days after the Effective Date (the "*Administrative Claims Bar Date*").  Holders of Administrative Claims that are required to File and serve a request for payment of such Administrative Claims, including, without limitation, Holders of Claims for liabilities constituting or relating to commercial tort claims or patent, trademark, or copyright infringement claims who assert that such claims constitute Administrative Claims, that do not File and serve such a request by the applicable Claims Bar

Date shall be forever barred, estopped, and enjoined from asserting such Administrative Claims against the Debtors, any Reorganized Debtors, KOKO, or their Estates and property, and such Administrative Claims shall be deemed discharged as of the Effective Date.  Objections to such requests must be Filed and served on the Debtors and Plan Administrator and the requesting party by the later of (a) 120 Days after the Effective Date and (b) 60 Days after the Filing of the applicable request for payment of Administrative Claims, if applicable, as the same may be modified or extended from time to time by the Bankruptcy Court or on motion of a party in interest approved by the Bankruptcy Court.

2.      Professional Compensation and Reimbursement Claims

Retained Professionals or other Entities asserting a Fee Claim for services rendered before the Effective Date must File and serve on the Debtors and Plan Administrator, and such other Entities who are designated by the Bankruptcy Rules, the Confirmation Order, or other order of the Bankruptcy Court, an application for final allowance of such Claim no later than 45 Days after the Effective Date.  Objections to any Fee Claim must be Filed and served on the Debtors and Plan Administrator and the requesting party by 14 Days after the Filing of the applicable request for payment of the Fee Claim.  To the extent necessary, the Confirmation Order shall amend and supersede any previously entered order of the Bankruptcy Court regarding the payment of Fee Claims.  Each Holder of an Allowed Fee Claim shall be paid by the Debtors or Plan Administrator in Cash within five (5) Business Days of entry of the order approving such Allowed Fee Claim.

B.      *DIP Facility Claim*

On the Effective Date, the DIP Facility Claim shall be deemed to be an Allowed Claim and, at the election of the DIP Lender, fully and finally satisfied by the distribution of the Plan Sponsor New Equity Interests.  If the DIP Lender does not so elect, the DIP Facility Claim shall be paid in full in Cash on the Effective Date.

C.      *Priority Tax Claims*

Each Holder of an Allowed Priority Tax Claim, if any, due and payable on or prior to the Effective Date shall receive from the Debtors, KOKO, or the Plan Administrator on account of such Claim (i) Cash within three months after the Effective Date equal to the amount of such Claim or (ii) Cash equal to the amount of such Claim plus interest at the prevailing rate distributed in four equal, annual installment payments made within three months after each of the first four anniversaries of the Effective Date.  In the event KOKO fails to make timely payments due to Allowed Priority Tax Claims under subsection (ii) of the foregoing sentence, and fails to cure such non-payment within 30 days from the receipt of written notice of such default ("*Tax Default Notice*") on KOKO and Debtors' counsel, the full amount of the Allowed Priority Tax Claim held by the governmental unit (as defined in the Bankruptcy Code) that provided a Tax Default Notice shall become immediately due and owing, and such governmental unit shall be able to enforce such obligations.  To the extent any Allowed Priority Tax Claim is not due and owing on the Effective Date, such claim shall be paid in full in Cash in accordance with the terms of any agreement between the Debtors, Plan Administrator, KOKO, or the Reorganized Debtors, and such Holder, or as may be due and payable under applicable non-bankruptcy law or

in the ordinary course of business.  KOKO shall pay the Allowed Claims held by a governmental unit (as defined in the Bankruptcy Code) for trust fund taxes, such as employee withholdings and sales taxes, within three months after the later of the Effective Date or the date that such Claim is Allowed.  For the avoidance of doubt, a governmental unit (as defined in the Bankruptcy Code) shall retain any lien securing an Allowed Claim against the Assets pending final payment of such Claim.

## ARTICLE III.

## CLASSIFICATION AND TREATMENT
## OF CLASSIFIED CLAIMS AND EQUITY INTERESTS

A.      *Summary*

1.      This Plan constitutes the chapter 11 plan of reorganization for the Debtors.  Except for the Claims addressed in Article II above (or as otherwise set forth herein), all Claims against the Debtors are placed in Classes.  Classes 4(a) and 4(b) consist of Equity Interests.  In accordance with section 1123(a)(1) of the Bankruptcy Code, the Debtors have not classified Administrative Claims and Priority Tax Claims, as described in Article II.

2.      The categories of Claims and Equity Interests listed below classify Claims and Equity Interests for all purposes, including, without limitation, voting, Confirmation, and Distribution pursuant hereto and pursuant to sections 1122 and 1123(a)(1) of the Bankruptcy Code.  The Plan deems a Claim or Equity Interest to be classified in a particular Class only to the extent that the Claim or Equity Interest qualifies within the description of that Class and shall be deemed classified in a different Class to the extent that any remainder of such Claim or Equity Interest qualifies within the description of such different Class.  A Claim or Equity Interest is in a particular Class only to the extent that any such Claim or Equity Interest is Allowed in that Class and has not been paid or otherwise settled prior to the Effective Date.

3.      <u>Summary of Classification & Treatment of Classified Claims and Equity Interests</u>

| <u>Class</u> | <u>Claim</u> | <u>Status</u> | <u>Voting Rights</u> |
|---|---|---|---|
| 1(a) | Priority Non-Tax Claims against nSpire Health, Inc. | Unimpaired | Presumed to Accept |
| 1(b) | Priority Non-Tax Claims against nSpire Health, LLC | Unimpaired | Presumed to Accept |
| 2 | Secured Claims against nSpire Health, Inc. | Unimpaired | Presumed to Accept |
| 3(a) | General Unsecured Claims against nSpire Health, Inc. | Impaired | Entitled to Vote |
| 3(b) | General Unsecured Claims against nSpire Health, LLC | Impaired | Entitled to Vote |

| | | | |
|---|---|---|---|
| 4(a) | Equity Interests in nSpire Health, Inc. | Impaired | Presumed to Reject |
| 4(b) | Equity Interests in nSpire Health, LLC | Impaired | Presumed to Reject |

B.    *Classification and Treatment of Claims and Equity Interests*

1.    <u>Class 1(a) – Priority Non-Tax Claims against nSpire Health, Inc.</u>

(a)    *Classification:* Class 1(a) consists of Priority Non-Tax Claims against nSpire Health, Inc.

(b)    *Treatment:*  Each holder of the Allowed Class 1(a) Claim shall receive from the Debtors, the Reorganized Debtors, or KOKO, in full satisfaction of such Claim, Cash as of the Effective Date, equal to the Allowed amount of such Claim.

(c)    *Voting:* Class 1(a) is an Unimpaired Class, and the Holders of Class 1(a) Claims are presumed to accept the Plan.

2.    <u>Class 1(b) – Priority Non-Tax Claims against nSpire Health, LLC</u>

(a)    *Classification:* Class 1(b) consists of Priority Non-Tax Claims against nSpire Health, LLC.

(b)    *Treatment:*  Each holder of the Allowed Class 1(b) Claim shall receive from the Debtors, the Reorganized Debtors, or KOKO, in full satisfaction of such Claim, Cash as of the Effective Date, equal to the Allowed amount of such Claim.

(c)    *Voting:* Class 1(b) is an Unimpaired Class, and the Holders of Class 1(b) Claims are presumed to accept the Plan.

3.    <u>Class 2 – Secured Claims against nSpire Health, Inc.</u>

(a)    *Classification:* Class 2 consists of Secured Claims against nSpire Health, Inc.

(b)    *Treatment:*  Except to the extent that a Holder of an Allowed Class 2 Secured Claims against nSpire Health, Inc. has been paid in full by the Debtors or previously received the Collateral securing such Claim prior to the Effective Date or agrees to alternate treatment, each Holder of an Allowed Class 2 Secured Claims against nSpire Health, Inc. shall receive, in full satisfaction of such Claim, the Collateral securing its such Claim or Cash as of the Effective Date equal to the Allowed amount of such Claim.

(c)    *Voting:* Class 2 is an Unimpaired Class, and the Holders of Class 2 Claims are presumed to accept the Plan.

4.        <u>Class 3(a) – General Unsecured Claims against nSpire Health, Inc.</u>

(a)    *Classification:* Class 3(a) consists of General Unsecured Claims against nSpire Health, Inc.

(b)    *Treatment:* Except to the extent that a Holder of an Allowed Class 3(a) Unsecured Claim against nSpire Health, Inc. has been paid by the Debtors prior to the Effective Date or agrees to alternate treatment, each Holder of an Allowed Class 3(a) Unsecured Claim against nSpire Health, Inc. shall receive, in full satisfaction of such Claim, an interest in the proceeds of the Causes of Action, Excluded Assets, and Net Profit Fund. Each interest shall be pro rata with the Allowed General Unsecured Claims against nSpire Health, Inc. and Allowed General Unsecured Claims against nSpire Health, LLC. *Provided*, *however*, Distributions from the Net Profit Fund to each Holder of an Allowed Class 3(a) Unsecured Claim against nSpire Health, Inc. shall not exceed an amount equal to 46.35% of such Claim.

(c)    *Voting:* Class 3(a) is an Impaired Class, and the Holders of the Class 3(a) Claims are entitled to vote to accept or reject the Plan.

5.        <u>Class 3(b) – General Unsecured Claims against nSpire Health, LLC</u>

(a)    *Classification:* Class 3(b) consists of General Unsecured Claims against nSpire Health, LLC.

(b)    *Treatment:* Except to the extent that a Holder of an Allowed Class 3(b) Unsecured Claim against nSpire Health, LLC has been paid by the Debtors prior to the Effective Date or agrees to alternate treatment, each Holder of an Allowed Class 3(b) Unsecured Claim against nSpire Health, LLC shall receive, in full satisfaction of such Claim, an interest in the proceeds of the Causes of Action, Excluded Assets, and Net Profit Fund. Each interest shall be pro rata with the Allowed General Unsecured Claims against nSpire Health, Inc. and Allowed General Unsecured Claims against nSpire Health, LLC. *Provided*, *however*, Distributions from the Net Profit Fund to each Holder of an Allowed Class 3(b) Unsecured Claim against nSpire Health, LLC shall not exceed an amount equal to 46.35% of such Claim.

(c)    *Voting:* Class 3(b) is an Impaired Class, and the Holders of the Class 3(b) Claims are entitled to vote to accept or reject the Plan.

6.        <u>Class 4(a) – Equity Interests in nSpire Health, Inc.</u>

(a)    *Classification:* Class 4(a) consists of Equity Interests in nSpire Health, Inc.

(b)    *Treatment:* On the Effective Date, Equity Interests in nSpire Health, Inc. shall be cancelled, and Holders of Equity Interests in nSpire Health, Inc. shall receive no value on account of such Equity Interests.

(c)     *Voting:* Holders of Equity Interests in Classes 4(a) are not entitled to receive or retain any property under the Plan and, by operation of law, are conclusively presumed to have rejected the Plan and, therefore, are not entitled to vote.

7.     Class 4(b) – Equity Interests in nSpire Health, LLC

(a)     *Classification:* Class 4(b) consists of Equity Interests in nSpire Health, LLC.

(b)     *Treatment:*  On the Effective Date, Equity Interests in nSpire Health, LLC shall be cancelled, and Holders of Equity Interests in nSpire Health, LLC shall receive no value on account of such Equity Interests.

(c)     *Voting:*  Holders of Equity Interests in Classes 4(b) are not entitled to receive or retain any property under the Plan and, by operation of law, are conclusively presumed to have rejected the Plan and, therefore, are not entitled to vote.

## ARTICLE IV.

## ACCEPTANCE OR REJECTION OF THE PLAN

A.     *Presumed Acceptance of Plan*

Classes 1(a), 1(b), and 2 are Unimpaired and, by operation of law, are conclusively presumed to have accepted this Plan and, therefore, are not entitled to vote.

B.     *Presumed Non-Acceptance of Plan*

Holders of Equity Interests in Classes 4(a) and 4(b) are not entitled to receive or retain any property under the Plan and, by operation of law, are conclusively presumed to have rejected the Plan and, therefore, are not entitled to vote.

C.     *Voting Classes*

Holders of Allowed Claims in Classes 3(a) or 3(b) as of the Record Date shall be entitled to vote to accept or reject the Plan.

D.     *Cramdown*

The Debtors request Confirmation of the Plan under section 1129(b) of the Bankruptcy Code with respect to any Impaired Class that does not accept the Plan pursuant to section 1126 of the Bankruptcy Code and with respect to Classes 3(a) and 3(b).  The Debtors reserve the right to modify the Plan to the extent, if any, that Confirmation pursuant to section 1129(b) of the Bankruptcy Code requires modification.

E.      *Elimination of Vacant Classes*

Any Class of Claims that is not occupied as of the date of commencement of the Confirmation Hearing by the Holder of an Allowed Claim or a Claim temporarily Allowed Claim under Bankruptcy Rule 3018 shall be deemed eliminated from the Plan for purposes of voting to accept or reject the Plan and for purposes of determining acceptances or rejection of the Plan by such Class pursuant to section 1129(a)(8) of the Bankruptcy Code.

## ARTICLE V.

## MEANS FOR IMPLEMENTATION OF THE PLAN

A.      *Reorganization of the Debtors*

Except as otherwise provided in this Plan, each of the Debtors, as Reorganized Debtors, shall continue to exist on and after the Effective Date as separate legal entities with all of the powers available to such legal entity under applicable law and pursuant to the Reorganized Debtors' Constituent Documents, without prejudice to any right to alter or terminate such existence (whether by merger or otherwise) in accordance with such applicable law.  On or after the Effective Date, without prejudice to the rights of any party to a contract or other agreement with any Reorganized Debtor, each Reorganized Debtor may, in its sole discretion, take such action as permitted by applicable law, and such Reorganized Debtor's Constituent Documents, as such Reorganized Debtor may determine is reasonable and appropriate, including, without limitation, causing: (i) a Reorganized Debtor to be merged into another Reorganized Debtor or an Affiliate of a Reorganized Debtor; (ii) a Reorganized Debtor to be dissolved; (iii) the legal name of a Reorganized Debtor to be changed; (iv) the closure of the Chapter 11 Cases on the Effective Date or any time thereafter; or (v) the reincorporation of a Reorganized Debtor under the law of a jurisdiction other than the law under which the Debtor currently is incorporated.

B.      *Issuance of the Plan Sponsor New Equity Interest*

On the Effective Date, the Plan Sponsor shall contribute subordinated debt, subordinate convertible debt, equity, or any combination thereof ("*Exit Funding*") to KOKO in an amount up to $2,250,000.  The Plan Sponsor's contribution of Exit Funding shall be used to fund KOKO's working capital needs and Plan payments due on the Effective Date, to the extent the Debtors have insufficient Cash to make such payments.

In exchange for the Plan Sponsor's Exit Funding, the ownership interests in nSpire Health, LLC and nSpire Health, Inc. shall be cancelled.  After giving effect to such cancellation, the Plan Sponsor shall be issued 100% of the ownership interests in Reorganized nSpire Health, LLC and Reorganized nSpire Health, Inc. (the "*Plan Sponsor New Equity Interests*").  The ownership interests in the foregoing Reorganized Debtors shall have the rights, privileges, limitations, and restrictions set forth in the Reorganized Debtors' Constituent Documents of each respective Reorganized Debtor, as set forth in the Plan Supplement.

C.      *Vesting of Assets and Plan Liabilities to KOKO*

On the Effective Date, in exchange for the Plan Sponsor's Exit Funding, all property of the Estates and any property acquired by the Debtors pursuant to the Plan, shall vest in KOKO, free and clear of all liens, Claims, charges, or other encumbrances in all events, and KOKO shall assume the Debtors' liability under the Plan, including fees payable pursuant to section 1930 of title 28 of the United States Code, shall transfer to KOKO.  The Assets transferred or assigned to KOKO under the preceding sentence shall not include Excluded Assets or tax benefits held by nSpire Health, Inc. or nSpire Health, LLC generated from prior net operating losses.  The transactions described in Article V.C. of this Plan shall be effective immediately upon the Effective Date without further action from the Reorganized Debtors.  After giving effect to the transfer of obligations and liabilities under Article V.C. of this Plan, the Debtors and Reorganized Debtors shall no longer have liability for such obligations and liabilities.

D.      *The Net Profit Fund*

On the Effective Date, or as soon as reasonably practicable after the Effective Date, the Plan Administrator shall establish the Net Profit Fund.

1.      On, or as soon as reasonably practicable after, each of the first five Effective Date anniversaries following the Effective Date, KOKO shall transfer to the Net Profit Fund up to $103,657 (the "*Maximum Contribution*") of Net Profit generated from KOKO's operations during the 12 month period preceding the Effective Date Anniversary (the "*Contribution Period*"); provided, however, that, to the extent the annual contribution under Article V.D.1. of the Plan exceeds 50% of KOKO's operating cash flow during the applicable Contribution Period, such annual contribution shall be reduced to an amount equal to 50% of KOKO's operating cash flow during the applicable Contribution Period.

2.      To the extent an annual contribution under Article V.D.1. of the Plan is less than the Maximum Contribution (a "*Contribution Shortfall*"), KOKO shall transfer to the Net Profit Fund an amount equal to the greater of the Contribution Shortfall plus the Maximum Contribution or 50% of KOKO's operating cash flow during the applicable Contribution Period on, or as soon as reasonably practicable after, an ensuring Effective Date Anniversary.  The balance of Contribution Shortfalls that are not fully satisfied pursuant to the preceding sentence shall be paid on a subsequent Effective Date Anniversary in accordance with the limitations set out in the preceding sentence.  *Provided*, *however*, KOKO's obligations under Article V.D.1. of the Plan shall be fully satisfied, regardless of the existence of a Contribution Shortfall, after making the payment due under Article V.D.1. of the Plan on the fifth Effective Date Anniversary.

3.      The maximum Net Profit KOKO shall be required to provide under Article V.D.1. of the Plan shall be equal to 46.35% of the sum of Allowed General Unsecured Claims against nSpire Health, Inc., Allowed General Unsecured Claims against nSpire Health, LLC., and the reserve for Disputed Claims provided under Article V.D.4. of the Plan.

4.      Except as otherwise provided herein, as soon as reasonably practicable after each of the first five Effective Date anniversaries following the Effective Date, the Plan Administrator

shall cause the Cash in the Net Profit Fund to be distributed pursuant to the terms of this Plan. However, if at the time the Plan Administrator is required to make a Distribution there exists Disputed Claims in Class 3(a) or 3(b) of the Plan, the Plan Administrator shall reserve Cash in the Net Profit Fund sufficient to satisfy Plan obligations to the Holder of such Claims until such time as the Disputed Claim is Allowed or disallowed by Final Order.

E.    *Plan Administrator*

1.    <u>Appointment of the Plan Administrator</u>

From and after the Effective Date, John Peterson shall serve as the Plan Administrator to administer the Causes of Action, Excluded Assets, and Net Profit Fund in accordance with and pursuant to the Plan until the resignation or discharge and the appointment of a successor Plan Administrator. The Plan Administrator shall have and perform all of the duties, responsibilities, rights, and obligations set forth in the Plan.

2.    <u>Rights, Powers, and Duties of the Debtors and the Plan Administrator</u>

In addition to any other powers described herein, the powers and duties of the Plan Administrator consist of the following:

i.    To take control of, preserve, and convert to Cash, Causes of Action, Excluded Assets, and the Net Profit Fund, subject to the terms of this Plan;

ii.    To review and object to Claims Filed against the Debtors;

iii.    To investigate, prosecute, abandon, discontinue, dismiss, amend, settle, compromise, negotiate or otherwise resolve all disputes, including all Causes of Action and objections to Claims;

iv.    To use, acquire, or dispose of property without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules, other than those restrictions expressly imposed by the Plan and the Confirmation Order;

v.    To make Distributions on account of all Allowed Claims consistent with the terms of this Plan;

vi.    To retain, without further Court approval, Persons and professionals to assist in carrying out the powers and duties enumerated pursuant to this Plan;

vii.    To enter into contracts as necessary to assist in carrying out the powers and duties enumerated pursuant to this Plan;

viii.    To pay expenses incurred in carrying out the powers and duties enumerated pursuant to this Plan, including professional fees incurred after the Effective Date;

ix.     To the extent the Plan Administrator deems necessary, to take all necessary actions to assure that the corporate existence of the Debtors remain in good standing until entry of a final decree closing the Chapter 11 Cases;

x.     To open and maintain bank accounts and deposit funds and draw checks and make disbursements in accordance with the Plan;

xi.     To effectuate any of the provisions in this Plan;

xii.     At the appropriate time, to ask the Bankruptcy Court to enter the final decree; and

xiii.     To execute all documents appropriate to convey assets of the Estate consistent with the terms of this Plan.

F.     *Release of Liens, Claims, and Equity Interests*

Except as otherwise provided herein or in any contract, instrument, release, or other agreement or document entered into or delivered in connection with the Plan, on the Effective Date and concurrently with the applicable Distributions made pursuant to Article VII hereof, all liens, Claims, Equity Interests, mortgages, deeds of trust, or other security interests against the property of the Estate shall be fully released and discharged.

G.     *Certificate of Incorporation and Bylaws*

To the extent applicable, the certificates of incorporation and bylaws (or other formation documents relating to limited liability companies) of the Debtors shall be amended as may be required to be consistent with the provisions of the Plan and the Bankruptcy Code.  After the Effective Date, the Reorganized Debtors may file a new, or amend and restate its existing, certificate of incorporation, charter, and other Constituent Documents as permitted by the relevant state corporate law.

H.     *Effectuating Documents; Further Transactions; Exemption from Certain Transfer Taxes*

The Debtors, the Reorganized Debtors, KOKO, or Plan Administrator, as applicable, may take all actions to execute, deliver, file, or record such contracts, instruments, releases, and other agreements or documents and take such actions as may be necessary or appropriate to effectuate and implement the provisions of the Plan, without the need for any approvals, authorizations, actions, or consents except for those expressly required pursuant hereto.

Prior to, on or after the Effective Date (as appropriate), all matters provided for pursuant to the Plan that would otherwise require approval of the shareholders, members, directors, or members of the Debtors shall be deemed to have been so approved and shall be in effect prior to, on or after the Effective Date (as appropriate) pursuant to applicable law and without any requirement of further action by the shareholders, members, directors, managers, or partners of the Debtors, or the need for any approvals, authorizations, actions, or consents.

Pursuant to section 1146(a) of the Bankruptcy Code, any transfers of property pursuant hereto shall not be subject to any stamp tax or other similar tax or governmental assessment in

the United States, and the Confirmation Order shall direct the appropriate state or local governmental officials or agents to forgo the collection of any such tax or governmental assessment and to accept for filing and recordation instruments or other documents pursuant to such transfers of property without the payment of any such tax or governmental assessment. Such exemption specifically applies, without limitation, to all documents necessary to evidence and implement the provisions of and the Distributions to be made under the Plan.

## ARTICLE VI.

## TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

A.      *Rejection of Executory Contracts and Unexpired Leases*

Any Executory Contract or Unexpired Lease that has not expired by its own terms on or prior to the Effective Date and that (i) the Debtors have not assumed or assigned or rejected with the approval of the Bankruptcy Court, (ii) is not identified as assumed contract, or (iii) is not the subject of a motion to assume the same pending as of the Effective Date, shall be deemed rejected by the Debtors, and the entry of the Confirmation Order by the Bankruptcy Court will constitute approval of such rejection pursuant to sections 365(a) and 1123 of the Bankruptcy Code.

B.      *Claims on Account of the Rejection of Executory Contracts or Unexpired Leases*

With respect to Claims arising from the rejection of Executory Contracts or Unexpired Leases pursuant to Article VI of the Plan, the bar date to File Proofs of Claim in these Chapter 11 Cases will be reopened for a period of twenty-eight Days after the Effective Date, and all such Proofs of Claim must be filed with the Bankruptcy Court during that time.  Any such Claim that is Allowed by the Bankruptcy Court will be treated as an Allowed General Unsecured Claim. Any Claim arising from the rejection of an Executory Contract or Unexpired Lease pursuant to Article VI of the Plan for which a Proof of Claim is not timely filed will be forever barred from assertion against the Estates, the Debtors, the Reorganized Debtors, their successors and assigns, including KOKO, or their assets and properties, unless otherwise ordered by the Bankruptcy Court or as otherwise provided in the Plan.

## ARTICLE VII.

## PROVISIONS GOVERNING DISTRIBUTIONS

A.      *Distributions for Claims Allowed as of the Effective Date*

Except as otherwise provided in the Plan, a Final Order or as agreed to by the relevant parties, as to Claims that become Allowed Claims as of the Effective Date, (i) the Debtor, KOKO, or Plan Administrator shall make Distributions to Creditors entitled to receive Distribution pursuant to the Plan on the Effective Date; and (ii) KOKO or the Plan Administrator shall make Distributions to Holders of Claims in Class 2 as soon as reasonably practicable.

B.      *Distributions on Account of Claims Allowed After the Effective Date*

1.      Distributions on Disputed Claims

Except as otherwise provided in the Plan, a Final Order, or as agreed to by the relevant parties, Distributions on account of a Disputed Claim that becomes an Allowed Claim after the Effective Date shall be made on the date that such Claim becomes an Allowed Claim.

2.      Special Rules for Distributions to Holders of Disputed Claims

Notwithstanding any provision otherwise provided in the Plan, and except as otherwise agreed to by the relevant parties, no partial Distributions shall be made with respect to a Disputed Claim until all such disputes in connection with such Disputed Claim have been resolved by settlement or Final Order.  In the event that there are Disputed Claims requiring adjudication and resolution, the Reorganized Debtors, KOKO, or the Plan Administrator, as the case may be, shall establish appropriate reserves for potential Distribution on such Claims.

C.      *Delivery and Distributions and Undeliverable or Unclaimed Distributions*

1.      Record Date for Distributions

On the Distribution Record Date, the Claims Register shall be closed and any party responsible for making distributions shall be authorized and entitled to recognize only those Holders of Claims listed on the Claims Register as of the close of business on the Distribution Record Date.  If a Claim is transferred twenty (20) or fewer Days before the Distribution Record Date, the Plan Administrator, or the Debtors, as the case may be, shall make distributions to the transferee only to the extent practical and, in any event, only if the relevant transfer form contains an unconditional and explicit certification and waiver of any objection to the transfer by the transferor.

2.      Delivery of Distributions in General

Except as otherwise provided in the Plan, the Debtors, the Reorganized Debtors, KOKO, or the Plan Administrator, as the case may be, shall make distributions to Holders of Allowed Claims at the address for each such Holder as indicated on the Debtors' or the Plan Administrator's, as the case may be, records as of the date of any such distribution; *provided*, *however*, that the manner of such distributions shall be determined at the discretion of the Debtors, the Reorganized Debtors, KOKO, or the Plan Administrator, as applicable; and provided further, that the address for each Holder of an Allowed Claim shall be deemed to be the address set forth in any Proof of Claim Filed by that Holder.

3.      Plan Administrator Compensation

The Debtors, the Reorganized Debtors, or KOKO, as applicable, shall pay to the Plan Administrator all reasonable and documented fees and expenses of the Plan Administrator without the need for any approvals, authorizations, actions, or consents.  Compensation of the Plan Administrator, however, shall not exceed compensation which would be payable to a Chapter 7 trustee. The Plan Administrator shall submit detailed invoices to the Debtors,

Reorganized Debtors, or KOKO, as applicable, for all fees and expenses for which the Plan Administrator seeks reimbursement and the Debtors, the Reorganized Debtors, or KOKO, as applicable, shall pay those amounts that they, in their sole discretion, deem reasonable, and shall object in writing to those fees and expenses, if any, that the Debtors, the Reorganized Debtors, or KOKO, as applicable, deem to be unreasonable.  In the event the Debtors, the Reorganized Debtors, or KOKO object to all or any portion of the amounts requested to be reimbursed in a Plan Administrator's invoice, the Debtors, the Reorganized Debtors, or KOKO, as applicable, and such Plan Administrator shall endeavor, in good faith, to reach mutual agreement on the amount of the appropriate payment of such disputed fees or expenses.  In the event that the Debtors, the Reorganized Debtors, or KOKO, as applicable, and a Plan Administrator are unable to resolve any differences regarding disputed fees or expenses, such dispute shall be determined by the Bankruptcy Court.

    4.    *De Minimis* Distributions

Notwithstanding any other provision of the Plan to the contrary, the Plan Administrator, KOKO, or the Reorganized Debtors shall not be required to make a distribution on account of an Allowed Claim if the aggregate amount of all distributions authorized to be made on account of such Claim at the time of the Distribution is to be has a value less than $100.00; *provided*, *however*, that the party making the distribution shall make, or cause to be made, a Distribution of less than $100.00 if the Distribution shall be the final Distribution.

To the extent that any final Distribution would be *de minimis* or otherwise impracticable in the judgment of the Plan Administrator, the Plan Administrator may donate any such remaining funds to a 501(c)(3) charity related to the bankruptcy and restructuring field.

    5.    Undeliverable and Unclaimed Distributions

        (a)    Holding of Certain Undeliverable and Uncashed/Un-negotiated Distributions

Unless otherwise provided for in the Plan, if any Distribution to a Holder of an Allowed Claim made in accordance with the Plan is returned to the Reorganized Debtors, KOKO, or the Plan Administrator as undeliverable ("*Undeliverable Distributions*"), or is not returned, but remains uncashed or un-negotiated within 180 Days after the issuance of such distribution check ("*Uncashed Distributions*"), no further distributions shall be made to such Holder unless and until the Reorganized Debtors, KOKO, or the Plan Administrator is (i) in the case of Undeliverable Distributions, notified in writing of such Holder's then current address within the later of 90 Days after the Plan Administrator's, KOKO's, or the Reorganized Debtors' receipt of the Undeliverable Distribution, or 180 Days after the issuance of such Undeliverable Distribution, at which time, all currently and due missed distributions shall be made to such Holder on the next Periodic Distribution Date; or (ii) in the case of Uncashed Distributions, notified in writing within 180 Days after the issuance of such Uncashed Distribution of such Holder's then current address, at which time all currently and due missed distributions shall be made to such Holder on the next Periodic Distribution Date.  Otherwise, such distributions shall be treated as "*Unclaimed Distributions*," subject to Article VII.C.5(b) of the Plan.  Uncashed and

Undeliverable Distributions shall not be entitled to any additional interest, dividends, or other accruals of any kind on account of their not being claimed immediately.

(b)     Reversion as to Unclaimed Distributions

Any distribution under the Plan that is an Unclaimed Distribution pursuant to Article VII.C.5(a) of the Plan shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code and such Unclaimed Distribution shall revert to and vest in KOKO, free of any restrictions thereon and free of any Claims of such Holder with respect thereto.  Upon vesting, the Claim of any Holder or successor to such Holder with respect to such property shall be cancelled and forever barred, notwithstanding federal or state escheat, abandoned, or unclaimed property laws to the contrary.  Nothing contained the Plan shall require the Plan Administrator to attempt to locate any Holder of an Allowed Claim.

D.     *Compliance with Tax Requirements/Allocations*

To the extent applicable, the Reorganized Debtors, KOKO, or the Plan Administrator shall comply with all tax withholding and reporting requirements, if any, imposed on them by any governmental unit, and all distributions pursuant hereto shall be subject to such withholding and reporting requirements.   Notwithstanding any provision in the Plan to the contrary, the Reorganized Debtors, KOKO, or the Plan Administrator shall be authorized to take all actions necessary or appropriate actions to comply with such withholding and reporting requirements, including liquidating a portion of the distribution to be made under the Plan to generate sufficient funds to pay applicable withholding taxes, withholding distributions pending receipt of information necessary to facilitate such distributions or establishing any other mechanisms they believe are reasonable and appropriate.   The Reorganized Debtors, KOKO, or the Plan Administrator reserve the right to allocate all distributions made under the Plan in compliance with all applicable liens and encumbrances.  Prior to making any distribution, the Reorganized Debtors, KOKO, or the Plan Administrator, as the case may be, may, in their discretion as applicable, require a current W-9 form (or similar tax form) from the Holder of an Allowed Claim.   If the Reorganized Debtors, KOKO, or the Plan Administrator, as the case may be, requests a current W-9 form (or similar tax form) from the Holder of an Allowed Claim and such completed form is not received by the Reorganized Debtors, KOKO, or the Plan Administrator, as the case may be, within 180 Days of the mailing of such request (which deadline should be stated in such request), any distribution otherwise owing on account of such Allowed Claim shall be deemed an Unclaimed Distribution pursuant to Article VII.C.5(a) above and treated in accordance with Article VII.C.5(b) above.

For tax purposes, distributions in full or partial satisfaction of Allowed Claims shall be allocated first to the principal amount of Allowed Claims, with any excess allocated to unpaid interest that accrued on such Claims.

E.     *Calculation of Amounts to Be Distributed*

Each Holder of an Allowed Claim against the Debtors shall receive the full amount of the distributions that the Plan provides for Allowed Claims in the applicable Class.  Except as otherwise provided in the Plan, Holders of Claims shall not be entitled to interest, dividends, or

accruals on the distributions provided for in the Plan, regardless of whether such distributions are delivered on or at any time after the Effective Date.

F.      *Setoffs*

The Debtors, the Reorganized Debtors, KOKO, and the Plan Administrator may, pursuant to section 553 of the Bankruptcy Code or applicable non-bankruptcy law, set off against any Allowed Claim and the Distributions on account of such Allowed Claim (before any Distribution is made on account of such Allowed Claim), the amount of any adjudicated or resolved claims, equity interests, rights, and Causes of Action of any nature that the Debtors, KOKO, or the Reorganized Debtors may hold against the Holder of any such Allowed Claim, but only to the extent of such adjudicated or resolved amount.

# ARTICLE VIII.

# PROCEDURES FOR RESOLVING CONTINGENT, UNLIQUIDATED AND DISPUTED CLAIMS

A.      *Resolution of Disputed Claims*

1.      <u>Allowance of Claims</u>

Except as expressly provided in the Plan or in any order entered in the Chapter 11 Cases prior to the Effective Date (including, without limitation, the Confirmation Order), no Claim shall become an Allowed Claim unless and until such Claim is deemed Allowed under the Plan or the Bankruptcy Code or the Bankruptcy Court has entered a Final Order in the Chapter 11 Cases allowing such Claim, including, without limitation, the Confirmation Order.

2.      <u>Prosecution of Objections to Claims</u>

After the Confirmation Date, the Plan Administrator shall have the exclusive authority to File objections to Claims, settle, compromise, withdraw, or litigate to judgment objections to any and all Claims.  From and after the Effective Date, the Plan Administrator may settle or compromise any Disputed Claim without any further notice to or action, order or approval of the Bankruptcy Court.

3.      <u>Claims Estimation</u>

After the Confirmation Date, the Reorganized Debtors, KOKO, or the Plan Administrator may, at any time, request that the Bankruptcy Court estimate (i) any Disputed Claim pursuant to applicable law and (ii) any contingent or unliquidated Claim pursuant to applicable law, including, without limitation, section 502(c) of the Bankruptcy Code, regardless of whether any party has previously objected to such Claim or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court shall retain jurisdiction under 28 U.S.C. §§ 157 and 1334 to estimate any Disputed Claim, contingent Claim or unliquidated Claim, including during the litigation concerning any objection to any Claim or during the pendency of any appeal relating to any such objection.

Notwithstanding anything provided to the contrary herein, a Claim that has been expunged from the Claims Register but that is subject to appeal or has not been the subject of a Final Order, shall be deemed to be estimated at zero dollars, unless otherwise ordered by the Bankruptcy Court. All of the aforementioned Claims and objection, estimation, and resolution procedures are cumulative and not exclusive of one another.  Claims may be estimated and subsequently compromised, settled, withdrawn or resolved by any mechanism approved by the Bankruptcy Court.

   4. <u>Expungement or Adjustment to Claims Without Objection</u>

Any Claim that has been paid, satisfied, or superseded may be expunged on the Claims Register by the Plan Administrator, including in furtherance of the Plan Administrator's exercise of its duties, without a claims objection having to be Filed and without any further notice to or action, order, or approval of the Bankruptcy Court.

   5. <u>Deadline to File Objections to Claims</u>

Any objections to Claims shall be Filed no later than the Claims Objection Bar Date.

**B.** *Disallowance of Claims*

All Claims of any Entity from which property is sought by the Plan Administrator under sections 542, 543, 550, or 553 of the Bankruptcy Code or that the Plan Administrator allege is a transferee of a transfer that is avoidable under sections 522(f), 522(h), 544, 545, 547, 548, 549, or 724(a) of the Bankruptcy Code shall be disallowed if (a) the Entity, on the one hand, and the Plan Administrator, on the other hand, agree or the Bankruptcy Court has determined by Final Order that such Entity or transferee is liable to turnover any property or monies under any of the aforementioned sections of the Bankruptcy Code and (b) such Entity or transferee has failed to turnover such property by the date set forth in such agreement or Final Order.

**EXCEPT AS OTHERWISE AGREED, ANY AND ALL PROOFS OF CLAIM AND PROOFS OF INTEREST FILED AFTER THE APPLICABLE CLAIMS BAR DATE, AND ANY ADDITIONAL CLAIMS ASSERTED THROUGH A CLAIM AMENDMENT MADE AFTER THE APPLICABLE CLAIMS BAR DATE, SHALL BE DEEMED DISALLOWED AND EXPUNGED AS OF THE EFFECTIVE DATE WITHOUT ANY FURTHER NOTICE TO OR ACTION, ORDER OR APPROVAL OF THE BANKRUPTCY COURT, AND HOLDERS OF SUCH CLAIMS AND EQUITY INTERESTS MAY NOT RECEIVE ANY DISTRIBUTIONS ON ACCOUNT OF SUCH CLAIMS AND EQUITY INTERESTS, UNLESS SUCH LATE PROOF OF CLAIM OR EQUITY INTEREST IS DEEMED TIMELY FILED BY A BANKRUPTCY COURT ORDER ON OR BEFORE THE LATER OF (1) THE CONFIRMATION HEARING AND (2) 45 DAYS AFTER THE APPLICABLE CLAIMS BAR DATE.**

# ARTICLE IX.

## CONDITIONS PRECEDENT TO CONFIRMATION
## AND CONSUMMATION OF THE PLAN

A.    *Conditions Precedent to Confirmation*

It shall be a condition to Confirmation of the Plan that all provisions, terms and conditions set forth in the Plan are approved in the Confirmation Order.

B.    *Conditions Precedent to Consummation*

It shall be a condition to Consummation of the Plan that the following conditions shall have been satisfied or waived pursuant to the provisions of Article IX.C. of the Plan:

1.    The Plan (and all Plan Supplement documents, as applicable), including any amendments, modifications, or supplements thereto, shall be reasonably acceptable to the Debtors and the Plan Sponsor.

2.    The Confirmation Order shall have entered and become a Final Order in a form and in substance reasonably satisfactory to the Debtors and the Plan Sponsor.

3.    All actions, documents, certificates, and agreements necessary to implement the Plan shall have been effected or executed and delivered to the required parties and, to the extent required, filed with the applicable governmental units in accordance with applicable law.

4.    On the Effective Date, the Plan Administrator shall have been appointed and shall have assumed its rights and responsibilities.

C.    *Waiver of Conditions*

The conditions to Confirmation of the Plan and to Consummation of the Plan set forth in this Article IX may be waived by the Debtors and the Plan Sponsor without notice, leave or, order of the Bankruptcy Court or any formal action other than proceeding to confirm or consummate the Plan.

D.    *Effect of Non Occurrence of Conditions to Consummation*

If the Consummation of the Plan does not occur, the Plan shall be null and void in all respects and nothing contained herein or in the Disclosure Statement shall: (1) constitute a waiver or release of any claims by or Claims against or Equity Interests in the Debtors; (2) prejudice in any manner the rights of the Debtors, any Holders or any other Entity; or (3) constitute an admission, acknowledgment, offer or undertaking by the Debtors, any Holders or any other Entity in any respect.

# ARTICLE X.

## SETTLEMENT, RELEASE AND RELATED PROVISIONS

A.    *Compromise and Settlement*

The Confirmation Order will constitute the Bankruptcy Court's finding and determination that the settlements reflected in the Plan are (1) in the best interests of the Debtors, the Estate and all Holders of Claims and Equity Interests, (2) fair, equitable and reasonable, (3) made in good faith and (4) approved by the Bankruptcy Court pursuant to section 363 of the Bankruptcy Code and Bankruptcy Rule 9019. The Confirmation Order shall approve the releases by all Entities of all such contractual, legal and equitable subordination rights or Causes of Action that are satisfied, compromised and settled pursuant hereto.

B.    *Preservation of Rights of Action*

1.    <u>Maintenance of Causes of Action.</u>

Except as otherwise provided in the Plan or in the Confirmation Order, on the Effective Date, the Estates and the Plan Administrator shall retain all rights to commence, pursue, litigate, or settle, as appropriate, any and all Causes of Action included on the Retained Causes of Action Schedule, including, without limitation, Avoidance Actions against Creditors or other parties that received a prepetition transfer that is avoidable under Chapter 5 of the Bankruptcy Code. The Plan Administrator, in its sole and absolute discretion, shall determine whether to bring, settle, release, compromise, or enforce such Causes of Action.

2.    <u>Limitation of Liability.</u>

**The Debtors, as proponents of the Plan, and the Plan Sponsor, together with their agents, representatives, advisors, and attorneys (collectively, the "*Exculpated Parties*"), will neither have nor incur any liability to any person or entity for any Official Actions in good faith taken or omitted to be taken in connection with or related to the Chapter 11 Cases, the investigations of potential claims or the formulation, preparation, dissemination, implementation, Confirmation or Consummation of the Plan, the Disclosure Statement, or any agreement created or entered into in connection with the Plan or incident to the Chapter 11 Cases, provided that, the foregoing shall not exonerate any of the Exculpated Parties from any liability that results from an act or omission to the extent such act or omission is determined by Final Order to have constituted gross negligence or willful misconduct. In addition, notwithstanding any other provision of the Plan, no holder of a Claim or Equity Interest, no other party in interest, none of their respective agents, employees, representatives, financial advisors, attorneys, or affiliates, and no successors or assigns of the foregoing, shall have any right of action against any Exculpated Party for any Official Actions made in good faith from and after the Petition Date through the Confirmation Date in connection with, relating to or arising out of the Chapter 11 Cases or the consideration, formulation, preparation, dissemination, implementation, Confirmation, or Consummation of the Plan, the Disclosure Statement, or any transaction or document created or entered into, or any other act taken or omitted to be taken, in connection**

therewith, except for: **(a)** the liability of any Exculpated Party that would otherwise result from the failure to perform or pay any obligation or liability under the Plan or any contract, instrument, release or other agreement or document to be entered into or delivered in connection with the Plan, **(b)** the liability of any Exculpated Party that would otherwise result from any such act or omission to the extent that such act or omission is determined in a Final Order to have constituted gross negligence or willful misconduct, and **(c)** actions taken by Exculpated Parties who are holders of a Claim and are taking actions in pursuit of their allowance or payment of such Claim; for the avoidance of doubt there shall be no liability limitation for the Debtors, their Insiders, and affiliates for their actions or omissions occurring before the Petition Date, or their actions or omissions after the Petition Date that are not Official Actions made in good faith.

       3.    <u>Debtor Releases.</u>

Notwithstanding anything contained herein to the contrary, as of the Effective Date, and to the fullest extent authorized by applicable law, for good and valuable consideration, the adequacy of which is hereby confirmed, the Released Parties are deemed released and discharged by each of the Debtors, each of the Reorganized Debtors, the Estate, and any entity seeking to exercise the rights of the Debtors, the Reorganized Debtors, or the Estate, including KOKO, from any and all claims, obligations, suits, judgments, damages, demands, debts, remedies, causes of action, rights of setoff, other rights, and liabilities whatsoever, whether for tort, contract, violations of federal or state securities laws, avoidance claims, including any derivative claims, asserted or that could possibly have been asserted directly or indirectly on behalf of the Debtors, the Reorganized Debtors, or the Estate, whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, existing or hereafter arising, in law, equity, or otherwise, and any and all causes of action asserted or that could possibly have been asserted on behalf of the Debtors, the Reorganized Debtors, or the Estate (whether individually or collectively) or on behalf of the holder of any claim or equity interest or other entity, based on or in any way relating to, or in any manner arising from, in whole or in part, the Debtors, the Reorganized Debtors, or the Estate, the conduct of the Debtors' businesses, any act or omission in the capacity as an officer or director of any Debtor, the in-court or out-of-court efforts to restructure or liquidate the Debtors, the formulation, preparation, solicitation, dissemination, negotiation, or filing of the Disclosure Statement or Plan (including the Plan Supplement) or any contract, instrument, release, or other agreement or document created or entered into in connection with or pursuant to the Disclosure Statement, or the Plan (including the Plan Supplement), the filing and prosecution of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the subject matter of, or the transactions or events giving rise to, any claim or equity interest that is treated in this Plan, the business or contractual arrangements between the Debtors, the Reorganized Debtors, or the Estate, on the one hand, and any Released Party, on the other hand, prepetition contracts and agreements with any Debtor, or any other act or omission, transaction, agreement, event, or other occurrence taking place before the Effective Date; provided, however, that the foregoing provisions of the Debtor releases shall not operate to waive or release **(1)** any causes of action arising from fraud, gross negligence, or willful misconduct as determined by a Final Order of any court of competent jurisdiction; or **(2)** the right of the Debtors, KOKO, or the Reorganized

Debtors to enforce this Plan and the contracts, instruments, releases, and other agreements or documents delivered under or in connection with this Plan or assumed pursuant to this Plan or assumed pursuant to a Final Order.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the releases set forth in this section, which includes by reference each of the related provisions and definitions contained herein, and further, shall constitute the Bankruptcy Court's finding that such releases are: (1) in exchange for the good and valuable consideration provided by the Released Parties; (2) a good faith settlement and compromise of the claims released by this section; (3) in the best interests of the Debtors and the Estate; (4) fair, equitable, and reasonable; (5) given and made after due notice and opportunity for hearing; and (6) a bar to any entity asserting any claim or cause of action released by this section.

The provisions of Article X.B.2. and 3. shall not affect the rights of the Internal Revenue Service against third party, non-debtors.

## ARTICLE XI.

## BINDING NATURE OF PLAN

THE PLAN SHALL BIND ALL HOLDERS OF CLAIMS AGAINST AND EQUITY INTERESTS AND INTERCOMPANY INTERESTS IN THE DEBTORS TO THE MAXIMUM EXTENT PERMITTED BY APPLICABLE LAW, NOTWITHSTANDING WHETHER OR NOT SUCH HOLDER (I) WILL RECEIVE OR RETAIN ANY PROPERTY OR INTEREST IN PROPERTY UNDER THE PLAN, (II) HAS FILED A PROOF OF CLAIM OR INTEREST IN THE CHAPTER 11 CASES OR (III) FAILED TO VOTE TO ACCEPT OR REJECT THE PLAN OR VOTED TO REJECT THE PLAN.

## ARTICLE XII.

## RETENTION OF JURISDICTION

Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, the Bankruptcy Court shall, after the Effective Date, retain such jurisdiction over the Chapter 11 Cases and all Entities with respect to all matters related to the Chapter 11 Cases, the Debtors and the Plan as legally permissible, including, without limitation, jurisdiction to:

1.      allow, disallow, determine, liquidate, classify, estimate or establish the priority or secured or unsecured status of any Claim, including, without limitation, the resolution of any request for payment of any Administrative Claim and the resolution of any and all objections to the allowance or priority of any Claim;

2.      grant or deny any applications for allowance of compensation or reimbursement of expenses authorized pursuant to the Bankruptcy Code or the Plan, for periods ending on or before the Confirmation Date;

3.      resolve any matters related to the assumption, assignment or rejection of any Executory Contract or Unexpired Lease to which a Debtors are party or with respect to which a Debtors or Liquidating Debtors may be liable and to adjudicate and, if necessary, liquidate, any Claims arising therefrom, including, without limitation, those matters related to any amendment to the Plan after the Effective Date to add Executory Contracts or Unexpired Leases to a list of Executory Contracts and Unexpired Leases to be assumed;

4.      resolve any issues related to any matters adjudicated in the Chapter 11 Cases;

5.      ensure that distributions to Holders of Allowed Claims are accomplished pursuant to the provisions of the Plan;

6.      decide or resolve any motions, adversary proceedings, contested or litigated matters, and any other Causes of Action that are pending as of the Effective Date or that may be commenced in the future, and grant or deny any applications involving a Debtor that may be pending on the Effective Date or instituted by the Plan Administrator after the Effective Date, *provided* that the Plan Administrator reserves the right to commence actions in all appropriate forums and jurisdictions;

7.      enter such orders as may be necessary or appropriate to implement or consummate the provisions of the Plan and all other contracts, instruments, releases, indentures and other agreements or documents adopted in connection with the Plan or the Disclosure Statement;

8.      resolve any cases, controversies, suits or disputes that may arise in connection with the Consummation, interpretation or enforcement of the Plan or any Entity's obligations incurred in connection with the Plan;

9.      issue injunctions and enforce them, enter and implement other orders or take such other actions as may be necessary or appropriate to restrain interference by any Entity with Consummation or enforcement of the Plan, except as otherwise provided in the Plan;

8.      enforce the terms of the Plan;

9.      enter and implement such orders or take such other actions as may be necessary or appropriate if the Confirmation Order is modified, stayed, reversed, revoked or vacated;

10.     resolve any other matters that may arise in connection with or relate to the Plan, the Disclosure Statement, the Confirmation Order, or any contract, instrument, release, indenture, or other agreement or document adopted in connection with the Plan or the Disclosure Statement; and

11.     enter an order concluding the Chapter 11 Cases.

# ARTICLE XIII.

## MISCELLANEOUS PROVISIONS

A.    *Payment of Statutory Fees*

All fees payable pursuant to section 1930 of title 28 of the United States Code after the Effective Date shall be paid prior to the closing of the Chapter 11 Cases when due or as soon thereafter as practicable.  Such fees shall be payable from the proceeds of Causes of Action included on the Retained Causes of Action Schedule, Excluded Assets, and the Net Profit Fund ahead of Distributions.

B.    *Modification of Plan*

Effective as of the date hereof and subject to the limitations and rights contained in the Plan: (a) the Debtors reserve the right, in accordance with the Bankruptcy Code and the Bankruptcy Rules, to amend or modify the Plan prior to the entry of the Confirmation Order; and (b) after the entry of the Confirmation Order, the Debtors, KOKO, or the Reorganized Debtors, as applicable, may, upon order of the Bankruptcy Court, amend or modify the Plan, in accordance with section 1127(b) of the Bankruptcy Code or remedy any defect or omission or reconcile any inconsistency in the Plan in such manner as may be necessary to carry out the purpose and intent of the Plan.

C.    *Revocation of Plan*

Except as expressly set forth in the Plan, the Plan shall have no force or effect unless and until the Bankruptcy Court enters the Confirmation Order.  Neither the filing of the Plan, any statement or provision contained in the Plan, nor the taking of any action by a Debtors or any other Entity with respect to the Plan shall be or shall be deemed to be an admission or waiver of any rights of: (1) any Debtors with respect to the Holders of Claims or Equity Interests or other Entity; or (2) any Holder of a Claim or an Equity Interest or other Entity prior to the Effective Date.

D.    *Successors and Assigns*

The rights, benefits, and obligations of any Entity named or referred to herein shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor, or assign of such Entity.

E.    *Reservation of Rights*

Except as expressly set forth herein, the Plan shall have no force or effect unless and until the Bankruptcy Court enters the Confirmation Order.  Neither the filing of the Plan, any statement or provision contained herein, nor the taking of any action by a Debtors or any other Entity with respect to the Plan shall be or shall be deemed to be an admission or waiver of any rights of: (1) any Debtors with respect to the Holders of Claims or Equity Interests or other Entity; or (2) any Holder of a Claim or an Equity Interest or other Entity prior to the Effective Date.

F.      *Section 1146 Exemption*

Pursuant to section 1146(a) of the Bankruptcy Code, any transfers of property pursuant hereto shall not be subject to any stamp tax or other similar tax or governmental assessment in the United States, and the Confirmation Order shall direct the appropriate state or local governmental officials or agents to forego the collection of any such tax or governmental assessment and to accept for filing and recordation instruments or other documents pursuant to such transfers of property without the payment of any such tax or governmental assessment. Such exemption specifically applies, without limitation, to all documents necessary to evidence and implement the provisions of and the distributions to be made under the Plan or, the extent necessary, from the Reorganized Debtors or KOKO.

G.      *Further Assurances*

The Debtors, KOKO, or the Reorganized Debtors, as applicable, all Holders of Claims receiving distributions hereunder and all other Entities shall, from time to time, prepare, execute and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of the Plan or the Confirmation Order.

H.      *Severability*

If, prior to Confirmation, any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision then will be applicable as altered or interpreted, *provided* that the Debtors, the Reorganized Debtors, KOKO, or any affected Entity (as applicable) may seek an expedited hearing before the Bankruptcy Court to address any objection to any such alteration or interpretation of the foregoing. Notwithstanding any such order by the Bankruptcy Court, alteration or interpretation, the remainder of the terms and provisions of the Plan shall remain in full force and effect. The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

I.      *Service of Documents*

Any pleading, notice or other document required by the Plan to be served on or delivered to the Debtors shall be sent by overnight mail to:

BROWNSTEIN HYATT FARBER SCHRECK, LLP
Michael J. Pankow, Esq.
Andrew J. Roth-Moore, Esq.
410 17th Street, Suite 2200
Denver, CO 80202
Phone: (303) 223-1100
Fax: (303) 223-1111
Email:  mpankow@bhfs.com

aroth-moore@bhfs.com

J.     *Return of Security Deposits*

Unless the Debtors have agreed otherwise in a written agreement or stipulation approved by the Bankruptcy Court, all security deposits provided by the Debtors to any Person or Entity at any time after the Commencement shall be returned to the Estates within twenty (20) Days after the Effective Date, without deduction or offset of any kind.

K.     *Filing of Additional Documents*

On or before the Effective Date, the Debtors may File with the Bankruptcy Court all agreements and other documents that may be necessary or appropriate to effectuate and further evidence the terms and conditions hereof.

19962496.13                                   32

Respectfully submitted,

February 27, 2020

**NSPIRE HEALTH, INC.**

Debtor and Debtor-in-Possession

By: _____
Name: John R. Peterson, PhD
Title:  Interim President & CEO

**NSPIRE HEALTH, LLC**

Debtor and Debtor-in-Possession

By: _____
Name: John R. Peterson, PhD
Title:  Interim President & CEO

APPROVED AS TO FORM:

BROWNSTEIN HYATT FARBER SCHRECK, LLP

/s/ Michael J. Pankow
Michael J. Pankow, #21212
Andrew J. Roth-Moore, #53402
410 17th Street, Suite 2200
Denver, Colorado  80202
Telephone:  (303) 223-1100
Facsimile:  (303) 223-1111
mpankow@bhfs.com
aroth-moore@bhfs.com

*Attorneys for the Debtors*

19962496.13                    33